# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| In the Matter of the Search of )<br>Four (4) parcels shipped through the United States )<br>Postal Service ("USPS") currently in the custody of )<br>the United States Postal Inspection Service in the )<br>City of Industry, California, as further described in )<br>Attachment A ) | Case No. **2:24-MJ-03243** |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

*See Attachment A*

located in the Central District of California, there is now concealed:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is :

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 843(b) | Unlawful Use of a Communication Facility, Including the Mails, to Facilitate the Distribution of a Controlled Substance |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (*give exact ending date if more than 30 days*: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Adam Girgle*
_____
Applicant's signature

Adam Girgle, USPIS Task Force Officer
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
Judge's signature

City and state: Los Angeles, CA     Hon. Karen Stevenson, U.S. Magistrate Judge
_____
Printed name and title

AUSA: Joseph De Leon x7280

**Attachment A**

<u>PARCELS TO BE SEARCHED</u>

The following parcels (the "SUBJECT PARCELS") seized from the mail stream between May 13 and May 17, 2024, and currently in the custody the United States Postal Inspection Service in the City of Industry, California:

a. A United States Postal Service ("USPS") parcel bearing tracking number 9534 6131 7591 4124 0410 33, consisting of a brown cardboard box weighing 2 pounds, 9.2 ounces, addressed to "Johnny Baca, P.O. Box 14028, Irvine, CA 92623" with a return address of "Isabella Reyes, 3477 S. Brampton Way, Boise, ID 23606," postmarked on May 3, 2024, in Boise, ID 23606 ("SUBJECT PARCEL 1");

b. A USPS parcel bearing tracking number 9405 8301 0935 5093 0936 73, consisting of a white cardboard box weighing 1 pound, 6.5 ounces, addressed to "Johnny Baca, P.O. Box 14028, Irvine, CA 92623," with a return address of "Javi Autobody, 2734 SW Edgarce St., Port St. Lucie, FL 34953-2732," postmarked on May 3, 2024, in Port St. Lucie, FL 34953-2732 ("SUBJECT PARCEL 2");

c. A USPS parcel bearing tracking number 9505 5066 8486 4127 5011 49, consisting of a white cardboard envelope weighing 3 pounds, 9.8 ounces, addressed to "Johnny Baca, P.O. Box 14028, Irvine, CA 92623," with a return address of "Jacob Sanchez, 44 Warrington St., Providence, RI 02907-1922," postmarked on May 6, 2024, in Providence, RI 02907-1922 ("SUBJECT PARCEL 3"); and

   d. A USPS parcel bearing tracking number 9505 5154 0207 4127 4013 74, consisting of a brown cardboard box weighing 10 pounds, 10.4 ounces, addressed to "Johnny Baca, P.O. Box 14028, Irvine, CA 92623," with a return address of "Anthony Q, 118 Jay Drive, New Castle, DE 19720," postmarked on May 6, 2024, in New Castle, DE 19720 ("SUBJECT PARCEL 4").

**ATTACHMENT B**

ITEMS TO BE SEIZED

The items to be seized are evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy to distribute and possess with intent to distribute a controlled substance), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance):

    a.    Any controlled substances, including marijuana;

    b.    Currency, money orders, bank checks, or similar monetary instruments in aggregate quantities over $1,000; and

    c.    Parcel wrappings used to conceal items described in (a) and/or (b).

**AFFIDAVIT**

I, Adam Girgle, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of an application for a warrant to search the following parcels shipped through the United States Postal Service ("USPS"), seized from the mail stream between May 13 and May 17, 2024, and currently in the possession the United States Postal Inspection Service ("USPIS") in the City of Industry, California (collectively, the "SUBJECT PARCELS"):

    a.  A parcel bearing tracking number 9534 6131 7591 4124 0410 33 ("SUBJECT PARCEL 1");

    b.  A parcel bearing tracking number 9405 8301 0935 5093 0936 73 ("SUBJECT PARCEL 2");

    c.  A parcel bearing tracking number 9505 5066 8486 4127 5011 49 ("SUBJECT PARCEL 3"); and

    d.  A parcel bearing tracking number 9505 5154 0207 4127 4013 74 ("SUBJECT PARCEL 4").

    e.  The SUBJECT PARCELS are described more fully in Attachment A, which is incorporated by reference.

2. The requested search warrant seeks authorization to seize evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy to distribute and possess with intent to distribute a controlled substance), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of

a controlled substance) (the "SUBJECT OFFENSES"), as described more fully in Attachment B, which is also incorporated by reference.

3.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

4.   I am a Task Force Officer ("TFO") with USPIS and have been so employed since May of 2022.  I am currently assigned as a TFO to the Contraband Interdiction and Investigations South Team of USPIS's Los Angeles Division, which is responsible for investigating drug trafficking violations involving the United States Mail.  As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.  Prior to being assigned as a TFO with the USPIS, I was a full-time, sworn law enforcement officer with the El Monte Police Department.  I have been a sworn law enforcement officer since May 2001.  I am a Police Officer

2

within the meaning of Section 830.1 of the California Penal Code.  Prior to being assigned as a TFO with USPIS, I was assigned as a narcotics detective with the El Monte Police Department.  I have approximately 15 years of investigative experience.

5.   I have received training and have experience investigating violations of state and federal narcotics and money laundering laws, including, but not limited to Title 21, United States Code, Sections 841, 846, 952, 959, and 963 and Title 18, United States Code, Section 1956(a).  I have been involved in various electronic surveillance methods including state and federal wiretap investigations, the debriefing of informants and witnesses, as well as others who have knowledge of the manufacturing, distribution, transportation, storage, and importation of controlled substances and the laundering of drug proceeds.

6.   I have participated in many aspects of drug investigations, including investigations into the smuggling of illegal drugs, money laundering, and extortion related to drug trafficking.  I am familiar with narcotics traffickers' methods of operation, including the manufacturing, storage, transportation, and distribution of narcotics, the collection of money that represents the proceeds of narcotics trafficking, and money laundering.  I am also familiar with the way narcotics traffickers transport and distribute narcotics in areas they control.  I am familiar with how drug traffickers utilize counter-surveillance techniques to avoid detection by law

3

enforcement.  I also know that drug traffickers often communicate with their drug-trafficking associates using cellular telephones.  I have become aware that more sophisticated drug trafficking networks now utilize the dark web, e-mail, Blackberry devices, Voice over Internet Protocol, video chat, internet messaging services, and social networking sites to communicate with one another.  During drug-related communications, traffickers often use coded or cryptic language to disguise the drug-related nature of their conversations.

    7.  I am also a canine handler with a narcotics detection canine.  My police canine partner "Rico" is a dual-purpose canine, meaning that he is certified in apprehension and narcotics detection.  My police canine partner Rico attended the Adlerhorst Police Canine Handler course in August of 2016.  Rico and I attended the Adlerhorst Canine Narcotics Detection course in November of 2017.  During this course, my police canine Rico received 240 hours of instruction in the detection of the odor of marijuana, methamphetamine, cocaine, and heroin.  My police canine partner Rico and I receive yearly certification from the Los Angeles County Police Canine Association in apprehension and narcotics detection.  I am familiar and knowledgeable in the behaviors my police canine partner Rico engages in when he detects the presence of the odor of illegal narcotics.  I conduct continual training with my police canine partner Rico by hiding various narcotics in different locations such as buildings, vehicles, bags, parcels and in open areas.  This training includes proofing canine Rico on odors such as plastic,

boxes, latex, tape, metal, currency (circulated and uncirculated), parcel packaging material, glass pipes and food. I also proof my police canine partner Rico of my human odor. This training is on-going and continual.

### III. SUMMARY OF PROBABLE CAUSE

8. Between May 13, 2024, and May 17, 2024, USPIS identified the SUBJECT PARCELS as bearing certain characteristics common to packages containing contraband. For example, all of the SUBJECT PARCELS were heavily, and seemingly excessively, taped shut, and bore sender and recipient names that do not appear to be associated with the sender and recipient addresses listed on the SUBJECT PARCELS. USPIS detained the SUBJECT PARCELS for further investigation.

9. On May 20, 2024, my trained drug detection dog, Rico, alerted to the exterior of each of the SUBJECT PARCELS, indicating the presence of drugs or other items, such as the proceeds of drug sales that have been contaminated by drugs, inside the SUBJECT PARCELS.

### IV. STATEMENT OF PROBABLE CAUSE

**A.  Background on Use of Mails for Drug Trafficking**

10. Based on my training and experience as a Postal Inspector, and the experiences related to me by fellow Postal Inspectors who specialize in drug investigations, I know the following:

    a. Los Angeles is a major source area for drugs. Drugs are frequently transported from Los Angeles through the United States Mail, and the proceeds from drug sales are

frequently returned to Los Angeles through the mail.  These proceeds are generally in the form of cash, money orders, bank checks, or similar monetary instruments in an amount over $1,000.00.

        b.   Drug traffickers and drug-trafficking organizations often use the U.S. Mail to transport controlled substances and proceeds from the sale of illegal narcotics throughout the United States and its territories.  Drug trafficking intelligence gained over the years has shown that drug traffickers utilize USPS for shipping controlled substances such as marijuana, cocaine, heroin, fentanyl, and methamphetamine.

        c.   Narcotics proceeds often contain the odor of narcotics because they have been contaminated with or associated with the odor of one or more controlled substances.

        d.   Drug distributors often use USPS Priority Mail Express, which is the USPS overnight/next day delivery mail product, or Priority Mail Service, which is the USPS two-to-three-day delivery mail product, to transport or distribute controlled substances and proceeds from the sales of controlled substances.

        e.   Priority Mail Express is guaranteed to be delivered on a set date and time, usually overnight (the deadline is determined at the time of mailing).  The customer receives a receipt with this guaranteed information and can opt for a signature requirement when the parcel is delivered.  Customers can track the parcel online by its distinct Priority

Mail Express tracking number.  The weight of the parcel and the distance traveled are the two main factors in setting the price.  Priority Mail Express costs more than Priority Mail.  Businesses using Priority Mail Express typically have a business or corporate account visible on the mailing label, which covers the cost of the mailing, in contrast to the drug distributor who will pay at the counter with cash or a credit card.  Drug distributors use the Priority Mail Express delivery service because of its speed, reliability, and the ability to track the parcel's progress to delivery.

       f.   Priority Mail has a delivery service standard of two to four business days but is not guaranteed.  Priority Mail is a less expensive alternative to Priority Mail Express, but still provides the ability to track a parcel.  Drug distributors use the Priority Mail delivery service because it provides them more time for travel between states if they decide to follow their shipments to their destination for distribution.  Also, by adding delivery confirmation to a Priority Mail parcel, drug traffickers have the ability to track the parcel's progress to the intended delivery point, as if the parcel had been mailed using the Priority Mail 2-Day Service.

       g.   USPS created electronic postage as a service for frequent mailers and businesses who prefer printing address labels and purchasing postage from their residence or business.  Drug traffickers may sometimes create electronic postage accounts as a means of giving legitimate appearance to their drug mailings.  In these cases, they typically create the

7

accounts using fictious account information and often provide pre-paid credit cards or cryptocurrency as a means of payment, which are difficult to track. The postage labels are printed/typed until typical drug-related mailing labels, which are routinely handwritten.

      h.   Drug traffickers often use fictitious or incomplete names and/or addresses to conceal their identities from law enforcement officers investigating these types of cases. Indeed, it is my experience that to the extent real addresses are ever used, it is only to lend a legitimate appearance to the parcel.

  11.  The following indicia suggest that a parcel may contain drugs or drug distribution proceeds:

      a.   The parcel is contained in a Large Flat Rate cardboard box;

      b.   The parcel bears a handwritten or typed label, whether USPS Express Mail or Priority Mail;

      c.   The handwritten or typed label on the parcel does not contain a business account number;

      d.   The seams of the parcel are all taped or glued shut;

      e.   The parcel emits an odor of a cleaning agent or adhesive or spray foam that can be detected by a human;

      f.   Multiple parcels are mailed by the same individual, on the same day, from different locations; and

      g.   Drug traffickers often use fictitious or incomplete names and addresses in an effort to conceal their

identities from law enforcement officers investigating these types of cases. To the extent that real addresses are ever used, it is only to lend a legitimate appearance to the parcel and is almost always paired with a false name.

12. Parcels exhibiting such indicia are the subject of further investigation, which may include verification of the addressee and return addresses.

**B.   Initial Investigation of the SUBJECT PARCELS**

13. Between May 13 and May 17, 2024, as part of an USPIS operation designed to identify suspicious parcels being processed at USPS facilities, I observed the SUBJECT PARCELS at USPS's City of Industry Process and Distribution Center and identified them as bearing suspicious characteristics that, in my training and experience investigating drug-distribution offenses using the mails, I know are common to packages containing narcotics. All of the SUBJECT PARCELS are USPS Priority Mail Express parcels shipped using USPS Priority Mail Express 1-Day service. Specifically, I observed the following suspicious characteristics for each of the SUBJECT PARCELS:

   a.   The seams of SUBJECT PARCEL 1 are heavily, and seemingly excessively, taped shut. It does not bear any USPS business account number. I queried the CLEAR[1] database for the sender information listed on SUBJECT PARCEL 1, "Isabella Reyes, 3477 S. Brampton Way, Boise, ID 23606"; this query indicated

---

[1] CLEAR is a public information database used by law enforcement that provides names, addresses, telephone numbers, and other identifying information.

9

that this S. Brampton Way address is genuine but that the sender's name, "Isabella Reyes," is not associated with this sender address. I also queried CLEAR for the recipient information listed on SUBJECT PARCEL 1, "Johnny Baca, P.O. Box 14028, Irvine, CA 92623"; this query indicated that this P.O. box address is genuine but that the recipient's name, "Johnny Baca," is not associated with that recipient address.

      b.    The seams of SUBJECT PARCEL 2 are heavily, and seemingly excessively, taped shut. It does not bear any USPS business account number. I queried the CLEAR database for the sender information listed on SUBJECT PARCEL 2, "Javi Autobody, 2734 SW Edgarce St., Port St. Lucie, FL 34953-2732"; this query indicated that this SW Edgarce St. address is genuine but that the sender's name, "Javi Autobody," is not associated with this sender address. I also queried CLEAR for the recipient information listed on SUBJECT PARCEL 2, "Johnny Baca, P.O. Box 14028, Irvine, CA 92623"; this query indicated that this P.O. box address is genuine but that the recipient's name, "Johnny Baca," is not associated with that recipient address.

      c.    The seams of SUBJECT PARCEL 3 are heavily, and seemingly excessively, taped shut. It does not bear any USPS business account number. I queried the CLEAR database for the sender information listed on SUBJECT PARCEL 3, "Jacob Sanchez, 44 Warrington St., Providence, RI 02907-1922"; this query indicated that this Warrington St. address is genuine but that the sender's name, "Jacob Sanchez," is not associated with this sender address. I also queried CLEAR for the recipient

10

information listed on SUBJECT PARCEL 3, "Johnny Baca, P.O. Box 14028, Irvine, CA 92623"; this query indicated that this P.O. box address is genuine but that the recipient's name, "Johnny Baca," is not associated with that recipient address.

        d.    The seams of SUBJECT PARCEL 4 are heavily, and seemingly excessively, taped shut. It does not bear any USPS business account number. I queried the CLEAR database for the sender information listed on SUBJECT PARCEL 4, "Anthony Q, 118 Jay Drive, New Castle, DE 19720"; this query indicated that this Jay Drive address is genuine but that the sender's name, "Anthony Q," is not associated with this sender address. I also queried CLEAR for the recipient information listed on SUBJECT PARCEL 4, "Johnny Baca, P.O. Box 14028, Irvine, CA 92623"; this query indicated that this P.O. box address is genuine but that the recipient's name, "Johnny Baca," is not associated with that recipient address.

      **C.    A Drug-Detection Dog Alerts to the SUBJECT PARCELS**

    14.    On May 20, 2024, my trained drug-detection dog, Rico, examined the exterior of the SUBJECT PARCELS.

    15.    Rico positively alerted to each of the SUBJECT PARCELS separately, indicating the presence of drugs or other items, such as the proceeds from the sale of drugs that have been recently contaminated by or associated with the odor of drugs.

//
//
//
//

## V. CONCLUSION

16. For the reasons above, there is probable cause to believe that SUBJECT PARCELS, as described in Attachment A, contain evidence, fruits, and instrumentalities of violations of the SUBJECT OFFENSES, as described in Attachment B.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this _____ day of
June, 2024.

_____
HON. KAREN STEVENSON
UNITED STATES MAGISTRATE JUDGE